IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Dealer Computer Services, Inc.
f/k/a Ford Dealer Computer Services,
Inc.,

        Plaintiff,

v.                                              Case No. 11-2305-JWL

Roland Griffith,

        Defendant.

**MEMORANDUM & ORDER**

Plaintiff filed suit against defendant under the Kansas Uniform Fraudulent Transfer Act, K.S.A. § 33-201 et seq. Defendant moves for summary judgment on the grounds that plaintiff's claims are barred by the applicable statute of limitations (doc. 95). As explained in more detail below, the motion is denied.

**I.    Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff Dealer Computer Services, Inc. ("DCS") provides dealer management systems and computerized publication display systems to automobile dealerships across the country. A dealer management system is a combination of computer hardware and software designed to manage all aspects of a dealership's operations, including accounting, vehicle inventory, parts inventory and service invoicing. Computerized publication display ("CPD") systems allow a dealership to search for and identify parts to be used in its

service department or sold in its parts department in a user-friendly visual format. DCS's customers lease these systems for a specific term during which DCS provides both maintenance and support.

Defendant Roland Griffith was formerly the president and sole shareholder of Griffith Ford-Mercury, Inc. (GFMI), a Ford-Mercury car dealership in Carroll County, Iowa. In 1995, GFMI entered into a written agreement with DCS to provide GMFI with a Dealer Management System (the DMS Agreement). The DMS Agreement called for GMFI to pay DCS monthly fees for software licensing and hardware maintenance for a term of 120 months from the date the DMS system became operational. In 1998, GFMI entered into a written agreement with DCS to provide GMFI with a CPD system (the CPD Agreement) for a term of 120 months from the date the CPD system became operational. By their terms, then, the DMS Agreement expired in May 2006 and the CPD agreement expired in March 2009.

On June 9, 2003, GFMI entered into an Asset Purchase Agreement with Michael Spencer and Jeffrey Rubino concerning the sale of the dealership. The terms included the assumption of significant debt, hard assets, a non-compete agreement and cash to be paid over a 10-year period. Mssrs. Spencer and Rubino also agreed to assume all accounts payable as of the date of the closing and to the "customary assumption of all open contracts and non-compete agreements." The asset sale was not final until March 25, 2004, when the sale was approved by Ford Motor Company.

On June 11, 2003, Becky Muhlbauer, GFMI's office manager, informed DCS that GFMI's dealership had been sold effective June 9, 2003. In response, DCS's attorneys, on June 25, 2003, wrote GFMI advising that GFMI must either assign the DCS contracts to the third-

party purchasers of GFMI's assets or remain fully responsible for continued performance under the contracts, including the payment of all amounts due under the contracts. DCS cautioned GFMI that it must either obtain the assignments or otherwise resolve the matter within 8 days of receipt of the letter. The record does not reflect the substance of any communications between Mr. Griffith and Mssrs. Spencer and Rubino concerning continued contractual payments to DCS.

After apparently receiving no response from GFMI, DCS sent a written Demand for Arbitration to GFMI in late July 2003. DCS also exercised its rights under the agreements to accelerate the amounts due under the agreements and demand payment of all amounts owed by GFMI under the contracts. In July 2004, a Final Award of Arbitrator was entered in favor of DCS and against GFMI. In March 2005, the United States District Court for the Eastern District of Michigan confirmed the arbitration award and entered judgment against GFMI in the amount of $267,695.71. In May 2006, DCS filed a Petition on Foreign Judgment in the Iowa District Court for Carroll County, Iowa. In connection with that proceeding, defendant Mr. Griffith appeared for a Judgment Debtor Examination on March 2, 2009.

During the examination, defendant discussed certain terms of the GFMI sale, although he did not provide a copy of the Asset Purchase Agreement at that time. Defendant testified that under the terms of the purchase agreement, GFMI received no money—he indicated that the purchase price was simply the assumption of debt. When asked whether he "personally received any money from the sale" of the dealership, Mr. Griffith testified, "Not at the time, but there's an arrangement in there for kind of a consulting fee." He explained that under the terms of the agreement, he received and continued to receive at that time monthly payments as a consulting

fee. The agreement itself provides that Mssrs. Spencer and Rubino were to pay a "purchase price" of $500,000 for GFMI's assets. The agreement further provides that the purchase price shall be paid as follows: "$1,000.00 at the time of the signing of this Agreement" and "[t]he balance shall be paid by Buyers to Sellers by way of an employment contract with Seller, Roland A. Griffith, at the rate of $46,000.00 annually for the first two years and $51,000.00 annually for the next eight years," payable monthly. Defendant did not provide a copy of the Asset Purchase Agreement to DCS until June 10, 2010, after GFMI was ordered to produce the document in the state court proceedings.

To date, GFMI has refused to pay any portion of the federal court judgment against it to DCS on the basis that it does not possess any assets. In its complaint, DCS alleges that the terms of the Asset Purchase Agreement whereby the proceeds were paid directly to defendant amount to a violation of the Kansas Uniform Fraudulent Transfer Act (KUFTA). According to DCS, defendant is liable to DCS for the full amount of GFMI's debt to DCS under alternative theories of intentional fraud and constructive fraud pursuant to the KUFTA.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and makes inferences in the light most favorable to the non-movant. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950,

959 (10th Cir. 2011). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party, the "nonmoving party must present more than a scintilla of evidence in favor of his position." *Id.* (quoting *Ford v. Pryor*, 552 F.3d 1174, 1177-78 (10th Cir. 2008)).

**III.   Discussion**

In the pretrial order, plaintiff contends that it is entitled to recover damages from Mr. Griffith pursuant to the Kansas Uniform Fraudulent Transfer Act, K.S.A. § 33-201 et seq. Asserting four alternative theories under the KUFTA, plaintiff contends generally that GFMI and Mr. Griffith orchestrated the fraudulent transfer of GFMI's property (namely, the $500,000 purchase price of the dealership) to Mr. Griffith personally. Defendant moves for summary judgment on each of the four theories asserted by plaintiff on the grounds that the claims are barred by the applicable statute of limitations. Plaintiff, in turn, responds that the claims are timely filed or, at a minimum, that genuine factual disputes concerning the timeliness of the claims preclude summary judgment.

*A.   Timeliness of Plaintiff's § 33-204(a)(1) Claim*

Plaintiff asserts in the pretrial order that the $500,000 paid to Mr. Griffith personally constitutes a fraudulent transfer by GFMI and Mr. Griffith in violation of § 33-204(a)(1), which provides that a transfer made by a debtor is fraudulent if the debtor made the transfer "with

5

actual intent to hinder, delay or defraud any creditor of the debtor." A cause of action under § 33-204(a)(1) must be brought "within four years after the transfer was made . . . or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." K.S.A. § 33-209(a). Defendant moves for summary judgment on the claim on the grounds that plaintiff's complaint was untimely filed. According to defendant, plaintiff at the very least had notice of the transfer on March 2, 2009 when Mr. Griffith testified during the judgment debtor examination that GFMI did not receive any payments from the sale of its assets and that payments were being made to him personally.[1]

Plaintiff contends in response to the motion that factual disputes exist concerning when it could reasonably have discovered GFMI's indirect transfer to Mr. Griffith.[2] According to plaintiff, the evidence viewed in the light most favorable to it demonstrates that it could not have reasonably discovered GFMI's transfer to Mr. Griffith at the debtor exam. As plaintiff highlights, Mr. Griffith testified at the debtor exam that the purchase price for GFMI's assets was simply the assumption of debt and that GFMI did not receive any money from the sale. Although he testified that he received a consulting fee from the sale, he did not indicate that the fee was in exchange for the sale of GFMI's assets. A reasonable jury could conclude that

---

[1] In the alternative, defendant contends that plaintiff had notice of the sale of GFMI's assets to Mssrs. Spencer and Rubino in June 2003. This argument, however, focuses on the transfer of the dealership's assets to Mssrs. Spencer and Rubino rather than the transfer that plaintiff alleges is fraudulent—GFMI's indirect transfer of $500,000 to Mr. Griffith.

[2] The parties dispute whether § 33-209(a) tolls the limitations period until the discovery of the transfer itself (as urged by defendant) or until the discovery of the fraudulent nature of the transfer (as urged by plaintiff). The court need not decide this issue as a reasonable jury could conclude that plaintiff could not reasonably have discovered GFMI's transfer to Mr. Griffith based on Mr. Griffith's testimony at the debtor exam.

6

plaintiff could not reasonably have discovered GFMI's transfer to Mr. Griffith based solely on Mr. Griffith's testimony at the debtor exam. Stated another way, a reasonably jury could conclude that plaintiff could not reasonably have discovered the transfer until it received a copy of the asset purchase agreement in June 2010 which revealed the "purchase price" of $500,000 payable to Mr. Griffith as a consulting fee. Because plaintiff's complaint was filed within one year of the date it obtained the purchase agreement, defendant has not shown as a matter of law that plaintiff's complaint was untimely filed. Summary judgment is denied.

*B.      Timeliness of Plaintiff's §§ 33-204(a)(2) and -205(a) Claims*

In the pretrial order, plaintiff also asserts that Mr. Griffith and GFMI transferred GFMI's property in violation of K.S.A. §§ 33-204(a)(2) and -205(a). Section 33-204(a)(2) generally provides that a transfer of property by a debtor is fraudulent if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business. Section 33-205(a) provides that a transfer by a debtor is fraudulent if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

KUFTA provides that any cause of action under § 33-204(a)(2) or -205(a) must be brought "within four years after the transfer was made or the obligation was incurred." K.S.A. § 33-209(b). In his motion for summary judgment, Mr. Griffith asserts that plaintiff's claims are untimely because the transfer was made no later than March 2004, when Ford approved the sale

7

of GMFI's assets to Mssrs. Spencer and Rubino.  Plaintiff, in response, contends that the transfer is ongoing because Mr. Griffith continues to receive periodic payments under the asset purchase agreement.  According to plaintiff, the statute of limitations runs from the time each payment is made to Mr. Griffith such that plaintiff can "look back" four years from the filing of its complaint and timely assert claims with respect to any transfers made within the four-year window.

As noted by Mr. Griffith, the KUFTA applies only to transfers "made . . . by a debtor." *See* K.S.A. §§ 33-204(a) & -205(a), (b).  Mr. Griffith contends that the only transfer made by the debtor in this case, GFMI, is the transfer of GFMI's assets to Mssrs. Spencer and Rubino no later than March 2004.  According to Mr. Griffith, the transfer of $500,000 to him was made by Mssrs. Spencer and Rubino rather than the debtor GFMI.  Plaintiff's theory of the case, however, as articulated in the pretrial order, is that GFMI fraudulently transferred $500,000 to Mr. Griffith through a series of ongoing payments (or multiple transfers) that continue today.  In support of its theory, plaintiff highlights that the KUFTA broadly defines a "transfer" to include "indirect" payments of money through "circuitous arrangements."  *See* K.S.A. § 33-201(*l*); *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 16-17 (Kan. 2000).  Plaintiff also offers some authority for its argument that each payment to Mr. Griffith constitutes a separate transfer such that plaintiff's claims are timely with respect to any transfers made within the four-year window.  *See Mills v. Everest Reinsurance Co.*, 410 F. Supp.2d 243, 254 (S.D.N.Y. 2006); *In re NM Holdings Co.*, 407 B.R. 232, 264 (Bkrtcy. E.D. Mich. 2009).

Mr. Griffith does not dispute the merits of plaintiff's "multiple transfers" argument; he simply asserts that any transfers to Mr. Griffith are irrelevant because those transfers were not

made by GFMI such that the only transfer to which the KUFTA applies is the transfer of GFMI's assets to Mssrs. Spencer and Rubino in March 2004. While Mr. Griffith would like to define plaintiff's claim for it by focusing on the transfer of assets from GFMI to Mssrs. Spencer and Rubino, plaintiff is obviously entitled to its own theory of the case. Accepting that theory of the case (because, of course, the court has not been asked on summary judgment to assess the merits of plaintiff's theory), defendant's motion is easily resolved on the limited issue it raises. Because plaintiff's complaint was timely filed as to any transfers by GFMI to Mr. Griffith in the 4-year window prior to the filing of the complaint, defendant has not shown as a matter of law that plaintiff's claims are time-barred.

C.   *Timeliness of Plaintiff's K.S.A. § 33-205(b) Claim*

Finally, plaintiff contends in the pretrial order that Mr. Griffith and GFMI transferred GFMI's property in violation of K.S.A. § 33-205(b), which provides that a transfer by a debtor is fraudulent "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." KUFTA provides that any cause of action under § 33-205(b) must be brought "within one year after the transfer was made or the obligation was incurred." K.S.A. § 33-209(c).

Defendant contends that this claim is untimely because the transfer of GFMI's assets to Mssrs. Spencer and Rubino occurred no later than March 2004—many years prior to the filing of plaintiff's complaint. Plaintiff, consistent with its earlier arguments, maintains that the pertinent transfer in this case is the indirect transfer from GFMI to Mr. Griffith of $500,000 in

9

the form of monthly payments from Mssrs. Spencer and Rubino to Mr. Griffith—payments which, according to plaintiff, continue to be made.  According to plaintiff, then, its § 33-205(b) claim is timely with respect to any payment made after June 1, 2010—one year prior to the filing of its complaint.  For the reasons explained above in connection with plaintiff's §§ 33-204(a)(2) and -205(a) claims, defendant has not shown as a matter of law that plaintiff's § 33-205(b) claims are time-barred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 95) is denied.

**IT IS SO ORDERED.**

Dated this 13th day of December, 2012, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge